Victor Viramontes (State Bar No. 159430)
Martha L. Gomez (State Bar No. 214158)
Matthew J. Barragan (State Bar No. 283883)
**MEXICAN AMERICAN LEGAL**
**DEFENSE AND EDUCATIONAL FUND**
634 S. Spring St., 11th Floor
Los Angeles, CA 90014
Telephone: 213.629.2512
Facsimile: 213. 629.0266
Email: vviramontes@maldef.org
          mgomez@maldef.org
          mbarragan@maldef.org

**ALEXANDER KRAKOW + GLICK LLP**
J. Bernard Alexander (State Bar No. 128307)
401 Wilshire Boulevard, Suite 1000
Santa Monica, CA 90401
Telephone: 310.394.0888
Facsimile: 310.394.0811
Email: balexander@akgllp.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE FLORES, RYAN REYES, BRIAN PEREZ,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF WESTMINSTER, MITCHELL WALLER, in his individual capacity, ANDREW HALL, in his individual capacity, RON COOPMAN, in his individual capacity, KEVIN BAKER, in his individual capacity, and DOES 1 to 20, inclusive,<br><br>Defendants. | Case No.: SACV 11-00278 DOC (RNBx)<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' REPLY TO DEFENDANTS' OBJECTION TO PLAINTIFFS'[LODGED] FINAL JUDGMENT**<br><br>The Honorable David O. Carter<br>Courtroom – 9D |

**TABLE OF CONTENT**

Page

I. INTRODUCTION ........................................................................................... 1

II. DEFENDANTS WAIVED ANY OBJECTIONS TO THE VERDICT FORM .............................................................................................................. 1

III. NINTH CIRCUIT LAW DICTATES THAT THE JURY RETURNED A GENERAL VERDICT FORM .................................................................... 1

    1. The Jury Returned A General Verdict Because They Were Given Extensive Jury Instructions on the Law and Applied the Facts to the Law .................................................................................................. 2

    2. A Plain Reading of the Verdict Form and Jury Instructions Indicates That The Jury Returned A General Verdict ............................................ 3

    3. The Jury Instructions Indicate That the §1981 Race Discrimination Claim Against the Chiefs (Claim 4) Had No Prerequisite Claim ............. 4

    4. Where Legal Claims Are Delineated For the Jury, Factual Interrogatories Are Merely a Checklist for A General Verdict ............................................ 5

    5. Defendants Cite To Inapposite Cases Because No Caselaw Supports Their Arguments ...................................................................................... 6

IV. DEFENDANTS CONCEDE THAT THERE IS NO INCONSISTENCY WITHIN THE RETALIATION CLAIMS ..................................................... 7

V. IN THE NINTH CIRCUIT, COURTS HAVE A DUTY TO RECONCILE SPECIAL VERDICTS ALSO .......................................................................... 8

VI. CONCLUSION ............................................................................................... 10

# TABLE OF AUTHORITIES

Page

**CASES**

*A & G. Stevedores v. Ellerman Lines, Ltd.*,
369 U.S. 355 (1962) ................................................................................................. 9

*Bains LLC v. Arco Products Co., Div. of Atlantic Richfield Co.*,
405 F.3d 764 (9th Circ. 2005) ............................................................................... 10

*Bonner v. Normandy Park, No.*,
No. C07–962RSM, 2009 WL 279070, at *7 (W.D. Wash. Feb. 2, 2009) ........................ 3

*Cash v. County of Erie*,
654 F.3d 324 (2nd Cir. 2011) .................................................................................. 5

*Dawkins v. City and County of Honolulu*,
2012 WL 1982461, at *7 (D. Hawai'i, May 31, 2012) ................................................. 2, 8

*Fabri v. United Technologies Int'l, Inc.*,
387 F3d 109 (2nd Cir. 2004) ................................................................................... 1

*Floyd v. Laws*,
929 F.2d 1390 (9th Cir.1991) .................................................................................. 1

*Fund of Funds, Ltd. v. Arthur Andersen & Co.*,
545 F. Supp. 1314 (S.D. New York 1982) ................................................................. 5

*Gallick v. Baltimore & Ohio R.R. Co.*,
372 U.S. 108 (1963) ................................................................................................. 8

*Pierce v. Southern Pacific Transp. Co.*,
823 F.2d 1366 (9th Cir. 1987) ................................................................................. 7

*R. H. Baker & Co. v Smith-Blair Inc.*,
331 F.2d 506 (9th Cir. 1964) ................................................................................. 2, 3

*Rogers v. McDorman*,
521 F.3d 381 (5th Cir. 2008) ................................................................................... 3

## TABLE OF AUTHORITIES (cont'd)

Page

**CASES**

*Schutzky Distributors, Inc. v. Kelly,*
643 F. Supp. 57 (N.D. Cal. 1986) .................................................................................. 9

*Toner v. Lederle Labs.,*
828 F.2d 510 (9th Cir.1987) ........................................................................................ 8

*Turyna v. Martam Const. Co., Inc.,*
83 F.3d 178 (7th Cir. 1996). ........................................................................................ 6

*Venezia v. Bentley Motors, Inc.,*
374 Fed. Appx. 765 (9th Cir. 2010) ........................................................................... 8

*Winarto v. Toshiba America Electonrics Compenents, Inc.,*
274 F.3d 1276 (9th Cir. 2001) .................................................................................... 6

*Zhang v. Am. Gem Seafoods, Inc.,*
339 F.3d 1020 (9th Cir. 2003) ............................................................................*passim*

**STATUTES**

42 U.S.C. §1981 ............................................................................................*passim*

Fed. R. Civ. Pro. 49 ................................................................................................... 1

Fed. R. Civ. Pro. 49(b) .............................................................................................. 2

Gov. Code §12940(h) ................................................................................................ 7

**OTHER AUTHORITIES**

Rutter Group Prac. Guide Fed. Civ. Trials & Ev. Ch. 18-A .............................................

## I. INTRODUCTION.

Plaintiffs respond to Defendants' Reply to Plaintiffs' Response to Defendants' Objections to Plaintiffs' [Lodged] Final Judgment and Memorandum of Points and Authorities ("Defendants' Reply"). Defendants' request for a new trial is unwarranted, both because they waived their right to object and because the jury verdict is factually and legally consistent.

## II. DEFENDANTS WAIVED ANY OBJECTIONS TO THE VERDICT FORM.

In the Ninth Circuit, a party waives any objection to inconsistent verdicts if he or she fails to object to the inconsistency "prior to submission to the jury." *See Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1029-1030 (9th Cir. 2003); *see also Fabri v. United Technologies Int'l, Inc.*, 387 F3d 109, 119 (2nd Cir. 2004).

Here, Defendants' only defense is that the waiver rules do not apply to special verdicts. If this Court finds, however, that the verdict form contained at least one general verdict, then the waiver rule does apply. Because Plaintiffs can show that the jury returned a general verdict on both the §1981 race discrimination and retaliation claims, Defendants have waived because they made an untimely objection. *Id.*

## III. NINTH CIRCUIT LAW DICTATES THAT THE JURY RETURNED A GENERAL VERDICT FORM.

In the Ninth Circuit, the substance of a jury verdict determines whether it is a general or special form. *Zhang*, 339 F.3d at 1031; *see also Floyd v. Laws*, 929 F.2d 1390 (9th Cir.1991). "[G]eneral verdicts do not involve factual findings but rather ultimate legal conclusions." *Id.* (citing Fed. R. Civ. Pro. 49). The Ninth Circuit "held that the theoretical distinction between general and special verdicts is that general verdicts require the jury to *apply the law to the facts*, and *therefore require legal instruction*, whereas special verdicts 'compel the jury to focus exclusively on its fact-finding role.'" *Id*. (citing

*Floyd*, 929 F.2d at 1395). If the jury "makes factual findings in addition to the ultimate conclusions, it returns a general verdict with interrogatories."[1] *Id.* at 1031.

### 1. The Jury Returned A General Verdict Because They Were Given Extensive Jury Instructions on the Law and Applied the Facts to the Law.

In the Ninth Circuit, the "[u]se of the special verdict eliminates the necessity for and use of complicated instructions on the law, which are a normal concomitant of the general verdict." *R.H. Baker & Co. v. Smith–Blair, Inc.,* 331 F.2d 506, 508 (9th Cir.1964). The Ninth Circuit reaffirmed this holding in *Floyd*, explaining that "[t]o help the jury reach a general verdict, the court must often provide a very long and detailed explanation of the law." 929 F.2d at 1395. In contrast, special verdicts require little instruction because they merely ask the jury to make factual findings without any application of the law. *Id.* ("special verdicts compel the jury to focus exclusively on its fact-finding role" … with "a minimum of legal instruction"). Moreover, special verdicts require "the judge to play a more prominent role by applying the law to the jury's finding of fact." *Id.*; *see also Dawkins v. City and County of Honolulu*, Civ. No. 10-00086 HG-KSC, 2012 WL 1982461, at *5 (D. Hawai'i, May 31, 2012) ("In a special verdict, a jury only makes factual findings, and the court then applies the law to those findings.").

Here, the jury received a 43 page jury instruction in addition to the verdict form. *See* Docket No. 198. The mere presence of this lengthy jury instruction indicates that the jury returned a general verdict. *R.H. Baker,* 331 F.2d at 508 (jury instructions are "concomitant" with general verdicts, while a "special verdict eliminates the necessity" for instruction). Moreover, the jury was expected to read the law in the instructions and apply it to the facts when answering the verdict form. *See* Docket No. 198, Jury Instruction No. 1 ("To those facts you will apply the law as I give it to you."). Because the jury was

---

[1] "The 2007 amendment to FRCP 49(b) substituted the phrase 'written questions' for 'interrogatories.' Any reference in prior case law to a 'general verdict accompanied by answers to interrogatories' means the same as a 'general verdict with answers to written questions.' The amendment was 'intended to be stylistic only.'" Rutter Group Prac. Guide Fed. Civ. Trials & Ev. Ch. 18-A (citing Fed. R. Civ. P. 49(b), Adv. Comm. Notes (2007)).

required to engage in the "application of the law to the facts" in finding the Chiefs liable, it returned a general verdict. *See Dawkins*, 2012 WL 1982461 at *6; *see also Zhang*, 339 F.3d at 1031; *Floyd*, 929 F.2d at 1395 (juries "reach a general verdict by applying the law to their findings of fact.").

The result is the same regardless of whether the form was titled "special" or "general." *See Bonner v. Normandy Park, No.*, No. C07–962RSM, 2009 WL 279070, at *7 (W.D. Wash. Feb. 2, 2009). Applying Ninth Circuit law, a federal court explained, "where a jury is instructed to apply legal principles and assign liability, the answers to the questions submitted to the jury are not special verdicts, despite the use of those words in the title appended to the form." *Id.* (internal citation and quotation omitted).

2. <u>A Plain Reading of the Verdict Form and Jury Instructions Indicates That The Jury Returned A General Verdict.</u>

The constitutional "mandate to create consistency requires that [the court] look beyond the face of the interrogatories to the … instructions as well." *See Rogers v. McDorman*, 521 F.3d 381, 396 (5th Cir. 2008); *see also R. H. Baker*, 331 F.2d at 509. When the jury instructions and jury verdict are read as a whole, the jury explicitly found that Chiefs Coopman and Hall "personally participated in violating [Plaintiffs'] rights" in violation of §1981's prohibition on race discrimination. *See* Verdict Questions No. 14 and 16; Jury Instruction No. 21 and 23. This constitutes an ultimate conclusion on the claim. *Zhang*, 339 F.3d at 1031.

On page 8 of the verdict form, the jury was asked to address "**CLAIM 4: 42 U.S.C. §1981 … RACE DISCRIMINATION**" against the individual Chiefs. *See* Jury Verdict at 8. The jury instruction for §1981 individual discrimination includes Instruction Nos. 21 and 23. Instruction No. 23 provides, "Plaintiffs seek to hold Defendants COOPMAN, HALL, WALLER and BAKER personally liable for discrimination … under Section 1981. In order to do so, Plaintiffs have the burden of proving that each individual defendant personally participated in violating their rights." *See* Jury Instruction No. 23.

The instruction, combined with the jury verdict, makes clear that the "rights" in question are regarding §1981 race discrimination, both because Claim 4 is clearly labeled "race discrimination" under "§1981," and also because Jury Instruction No. 23 refers to "discrimination" under "§1981." By marking "Yes" to indicate that Coopman and Hall "personally participate[d] in … one or more decision," *see* Verdict No. 14, 16, those decisions necessarily include the decision to "violat[e] [Plaintiffs'] rights" to be free from discrimination "under Section 1981." *See* Jury Instruction No. 23. This constitutes a general verdict, or ultimate finding that the relevant Chiefs violated all the factual elements contained in Jury Instruction 21. *See Zhang*, 339 F.3d at 1031.

> 3. The Jury Instructions Indicate That the §1981 Race Discrimination Claim Against the Chiefs (Claim 4) Had No Prerequisite Claim.

Under Claim 3, the jury verdict instructed the jury to proceed to Claim 4 if they marked "no" at any point within Claim 3. *See* Jury Verdict Nos. 10-12 ("If your answer to question [10, 11, or 12] is 'yes' for any plaintiff, answer the next question for that plaintiff. If your answer to question [10, 11, or 12] is 'no' for all plaintiffs, go to question 14."). Question 14 is the beginning of Claim 4, regarding individual discrimination under §1981. Accordingly, Claim 3 regarding City liability for race discrimination under §1981 could not have been a prerequisite to Claim 4 regarding the Chiefs' individual liability under §1981. If City liability was a prerequisite to individual liability, then the instruction would not ask the jury to simply proceed to the next claim after marking "no" for City liability. Defendants noted, "the Ninth Circuit stated that two such legal conclusions can only stand if one conclusion is not a prerequisite for another." *Zhang,* 339 F.3d at 1034. This is precisely the case here, not only because structurally the verdict form instructions did not require a finding of liability for the City in order to reach the matter of individual liability under §1981, but also because legally City liability has a different standard than individual liability, and because the City and Chiefs are distinct Defendants. *See*

Plaintiffs Response to Defendants' Objections to Plaintiffs' [Lodged] Final Judgment, IV.1.(a)-(c).

That there is no inconsistency between the §1981 discrimination against the city and the §1981 discrimination against the Chiefs is further bolstered by Defendants' own argument. Defendants concede that "a jury could find a City employee liable for Section 1981 race discrimination without finding the City liable. Section 1981 municipal liability requires the finding of a policy or custom of discrimination and does not allow for respondeat superior liability." Defendants' Reply, Docket No. 245 at 12.

4. Where Legal Claims Are Delineated For the Jury, Factual Interrogatories Are Merely a Checklist for A General Verdict.

Where the jury instructions delineate the legal claims put forward, any accompanying interrogatories in a verdict form are merely a checklist to record a general verdict on each legal claim. *See Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 545 F. Supp. 1314, 1371-72 (S.D. New York 1982). In *Fund of Funds*, for instance, the jury was instructed, "(Y)ou must answer questions concerning both liability and damages for each of plaintiffs' four different theories of liability, that is, [1] primary violation of the securities laws, [2] aiding and abetting violation of the securities laws by others, [3] common law fraud, and [4] breach of contract." 545 F. Supp. at 1371 (parentheses in original). Under those facts, the court held that "[t]he "Special Verdict Form" was merely a checklist to record a general verdict on each legal claim." *Id.* at 1372; *see also Cash v. County of Erie*, 654 F.3d 324, 343 (2nd Cir. 2011) ("jury instructions that specifically identified certain questions as pertaining to [one particular] claim and others pertaining to [distinct claims], [are] reasonably construed to solicit general verdicts with interrogatories").

Here, the Court instructed the jury that "[t]here are five claims before you." *See* Jury Instruction No. 13. The Court further delineated each particular claim, including the relevant Defendants under each. *See Id.* Similarly, the jury verdict form delineated the

claim with a header that included the relevant statutes and Defendants. *See* Verdict Form at 2, 4, 6, 8, and 10.  Because the relevant factual interrogatories were delineated under each claim, the jury verdict is reasonably construed to solicit general verdicts on each claim, with supporting factual interrogatories. *Id.*  Defendants also agree, noting that in *Turyna v. Martam Const. Co., Inc.*, "where the verdict form broke out each claim[,]" … "the Court of Appeals of the Seventh Circuit held that the parties submitted a general verdict form[.]"  *See* Defendants' Reply, Docket 245 at 4; 83 F.3d 178 (7th Cir. 1996).

Notably, here the jury verdict could not possibly be a special verdict, because it did not require the jury to "focus exclusively" on factual findings. *See Floyd*, 929 F.2d at 1395 ("special verdicts compel the jury to focus exclusively on its fact-finding role.'"). While Defendants would argue otherwise, here, the jury did not have pure factual interrogatories divorced from the law.  This is true because the legal claims and underlying statutes were clearly demarked within the jury verdict form, and were further reinforced by jury instructions that  referenced the relevant law and specifically asked the jury to apply the law to the facts.  Under these facts, under Ninth Circuit law,  the jury returned a general verdict. *Zhang* , 339 F.3d at 1031.

In contrast, special verdicts require that the jury not apply the law to the facts, but merely answer factual questions devoid of the law.  For example, in *Floyd* the "verdict consisted of 14 clear and concise interrogatories which appear[ed] sufficient to elicit facts necessary for deciding the case" without any reference to claims or relevant law.  929 F.2d at 1395.  As a result, the Court determined the form was a special verdict. *Id.* The opposite is true here, because the factual interrogatories are joined to a legal claim coupled with extensive legal instructions. *Id.*

> 5. <u>Defendants Cite To Inapposite Cases Because No Case Law Supports Their Arguments.</u>

In an effort to advance their position that this case contained a special verdict, Defendants cite to *Winarto v. Toshiba America Electonrics Compenents, Inc.*, 274 F.3d

1276 (9th Cir. 2001). In *Winarto*, the court did not address the distinction between a special and general verdict because, the issue was not disputed by the parties. Likewise, the court did not engage in any legal analysis regarding inconsistent verdicts, because there was none. *Id.* Rather, the court merely noted, "[t]he case was tried to a jury that returned a special verdict comprised of answers to twenty-six questions." *Id.* at 1282. *Winarto* does nothing to advance Defendants' argument.

Defendants also cite to *Pierce v. Southern Pacific Transp. Co.*, in a failing effort to support their position. 823 F.2d 1366 (9th Cir. 1987). In *Pierce*, the jury had 10 factual interrogatories that were completely divorced from the law. *Id.* at n.1. The legal claims were not labeled or demarcated in any way, leaving it unclear whether the interrogatories were related to any particular claim and also making it impossible for a jury to apply the law to the facts in the interrogatory. *Id.* By definition, this interrogatory structure constitutes a special verdict, because it is simply fact-finding, which later requires the judge to apply the law. *Zhang*, 339 F.3d at 1031 (9th Cir. 2003). Here, the opposite is true, because the jury was instructed and did in fact apply the law to facts, in reaching determinations about delineated claims. *Id.*

Notably, the nature of the verdict form was not in dispute, in either *Pierce* or *Winarto,. See Pierce*, 823 F.2d 1366; *Winarto*, 274 F.3d 1276. Again, the court did not engage in legal analysis about the nature of the form. *Id.*

**IV. DEFENDANTS CONCEDE THAT THERE IS NO INCONSISTENCY WITHIN THE RETALIATION CLAIMS.**

Defendants do not argue, nor could they, that factual or legal inconsistencies exist as to Plaintiff Flores' retaliation claim. The claims are consistent regardless of whether they are analyzed as a special or general verdict. Under both scenarios the entire award is justified because the jury affirmatively answered factual questions supporting the ultimate claim. For instance, under Claim 2, the jury marked "Yes" to all the interrogatories regarding whether the City of Westminster retaliated against Plaintiffs Flores under Gov.

Code §12940(h)("FEHA"). *See* Claim 2 at Jury Verdict Nos. 6-9. Similarly, under Claim 5, the jury marked "Yes" to the interrogatories regarding whether Coopman, Waller, and Baker retaliated Flores in violation of §1981. *See* Claim 5 at Jury Verdict Nos. 18-19, 21.

While the jury returned two verdicts finding for Plaintiffs Flores in both his state and federal retaliation claims, the law would have permitted them to find liability under one and not the others without any inconsistency. *Dawkins*, 2012 WL 1982461, at *7 (*citing Venezia v. Bentley Motors, Inc.*, 374 Fed. Appx. 765, 768 (9th Cir. 2010)) ("inconsistencies between general verdicts on federal and state claim 'do not merit new trials.'"). This is precisely the case for Plaintiff Reyes, where the jury found no retaliation liability under FEHA, but affirmed retaliation liability under §1981. Moreover, Defendants also concede that "a finding of no liability on a state discrimination claim is not necessarily inconsistent with a finding of liability on a federal discrimination claim," provided that that one claim is "not a prerequisite for another." Defendants' Reply, Docket No. 245 at 12. This is precisely the case here.

## V. IN THE NINTH CIRCUIT, COURTS HAVE A DUTY TO RECONCILE SPECIAL VERDICTS ALSO.

The Supreme Court has held that a court, when confronted by seemingly inconsistent answers to the interrogatories of a *special verdict*, bears a duty under the Seventh Amendment to harmonize those answers whenever possible under a fair reading. *Gallick v. Baltimore & Ohio R.R. Co.,* 372 U.S. 108, 110, 119 (1963). Accordingly:

> When faced with a claim that [special] verdicts are inconsistent, the court must search for a reasonable way to read the verdicts as expressing a coherent view of the case, and must exhaust this effort before it is free to disregard the jury's verdict and remand the case for a new trial. The consistency of the jury verdicts must be considered in light of the judge's instructions to the jury.

*Toner v. Lederle Labs.,* 828 F.2d 510, 512 (9th Cir.1987) (citation omitted). The Seventh Amendment requires that "[w]here there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *Schutzky*

*Distributors, Inc. v. Kelly,* 643 F. Supp. 57, 62 (N.D. Cal. 1986) (citing *A & G. Stevedores v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962); *see also Pierce,* 823 F.2d at 1370.

In *El-Hakem v. BJY Inc.*, "[i]n its special verdict response, the jury found [the employee] liable for race discrimination under §1981 but did not find [the employer] similarly liable, even though the evidence showed that [the employee] was acting in the course and scope of his employment at all pertinent times." 415 F.3d 1068, 1074 (2005). "After concluding that the special verdicts were inconsistent, the district court amended the judgment to hold [the company] vicariously liable for discrimination." The Ninth Circuit affirmed the district court's judgment, explaining that "[b]ecause the evidence established that [the employee] was acting in the scope of his employment at all pertinent times, [the employer] was liable for [the employee's] acts as a matter of law, and the district court properly amended the judgment." *Id.* The Court further explained, "the jury response could be reconciled by considering the probable effect on the jury of not having the benefit of the correct instruction." *Id.*

Here, the same result is appropriate. Defendants concede that the Chiefs were "'necessarily acting within the course and scope at the time their decisions were made,' then if the jury found that the Chiefs were discriminating, it also should have found that the City was liable for discrimination under FEHA." *See* Defendants' Reply, Docket 245 at 12. As in *El-Hakem*, the Court should find that Defendant City is also liable for race discrimination and retaliation.

In *White v. Ford Motor Co.*, the jury found that the product defect did not proximately cause the victim's death, but then awarded damages. 312 F.3d 998, 1005 (9th Cir. 2002). Defendant Ford alleged there was an inconsistency that required judgment as a matter of law. *Id.* The Ninth Circuit Court disagreed, and harmonized the verdict, noting that "[t]he jury could have reasoned that the accident wasn't the 'natural and probable consequence' of the brake design defect, because the natural consequence of a manufacturer's discovering a dangerous design defect would be to warn customers and

recall the product for a fix, rather than to leave the dangerous truck on the street and leave the drivers ignorant of the hazard." *Id.* at 1006. The court concluded "[o]n review of the evidence and argument" … that "[t]here [wa]s no irreconcilable conflict." *Id.*

Similarly in *Bains LLC v. Arco Products Co., Div. of Atlantic Richfield Co.*, the jury found that "Flying B's claimed damages for lost profits were not 'shown with reasonable certainty" as required by jury instruction number 18." 405 F.3d 764, 771 (9th Cir. 2005). Defendants requested a new trial or a judgment as a matter of law, both of which the court denied. *Id.* at 770-771. The Ninth Circuit "agree[d] with the district court that the verdict is not inconsistent and does not establish the absence of economic harm." *Id.* at 771. The Court explained that "[o]n the evidence in this record, the jury could well have concluded that (1) racial discrimination had caused lost profits by delaying Flying B's drivers and thereby reducing the number of loads Flying B hauled; but (2) the jury did not have testimony that would enable it to put a number on how many loads were lost; so (3) even though lost profits were proved, the 'amount' of lost profits could not be established 'with reasonable certainty,' as the jury instruction required." *Id.* Thus, Court sustained the jury verdict for the plaintiffs.

In *R. H. Baker*, the jury returned a special verdict for appellees. 331 F.2d at 508-509. Appellants objected to the form of the question because "the jury's affirmative answer … did not exclude the possibility that both the patented and accused device were a new combination of the same or equivalent elements from the prior art." *Id.* at 508. The Ninth Circuit did not even reach the question of whether the disputed instruction was flawless, or if it could have been read multiple ways. Instead, it looked at the contexts of the whole record and asked whether there was a proper basis for judgment. *Id.* at 510 ("[W]hen reviewed in the context of the whole record … the jury's answer therefore provided a proper basis for the judgment of noninfringement."). Here, the entire record would include all the evidence, all the jury instructions, and the jury verdict. Moreover,

the Ninth Circuit Court further noted that Appellants' "motion for a new trial following the verdict came too late." *Id.* at 510. The same conclusion is appropriate here.

**VI. CONCLUSION.**

For the foregoing reasons, the Court should enter Judgment for Plaintiffs and deny Defendants' request for a new trial.

**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**

J. Bernard Alexander
**ALEXANDER KRAKOW + GLICK LLP**

DATED: May 1, 2014      By:      s/ Martha L. Gomez
                                  Martha L. Gomez
                                  *Attorneys for Plaintiffs*